UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JULIE A. PUCCI,

                Plaintiff,                    Case No. 08-10557
                                              Honorable David M. Lawson

v.

MICHIGAN SUPREME COURT,
JUSTICES CLIFFORD W. TAYLOR,
MICHAEL F. CAVANAGH, ELIZABETH
A. WEAVER, MAURA D. CORRIGAN,
ROBERT P. YOUNG, JR., STEPHEN J.
MARKMAN, MARILYN KELLY,

                Defendants.
_____/

## OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This is the second lawsuit filed by the plaintiff, Julie Pucci, arising from the loss of her job as a deputy court administrator in the Michigan nineteenth district court located in the ity of Dearborn. The first lawsuit is aimed at that court and its chief judge, who fired the plaintiff, she claims, under the pretext of an administrative reorganization. The plaintiff alleged in that case that in fact she was fired, among other reasons, in retaliation for complaining about the chief judge's religious proselytizing from the bench and because he was upset by the plaintiff's intimate relationship with another judge in that court. The present case names the state supreme court and its justices (in their individual and official capacities) as defendants for sending a directive to the nineteenth district court that prohibited the plaintiff from advancement to the position of court administrator because she was cohabiting with the other judge out of wedlock, and therefore was in violation of the "spirit" of the supreme court's anti-nepotism policy. In a single-count complaint, the plaintiff alleges that the defendants' actions violated her First and Fourteenth Amendment rights

because (1) the actions interfere with the plaintiff's right of association, affiliation, and intimate relationship; (2) they violate her right to equal protection of law; (3) they violate her substantive due process rights, and perhaps procedural due process rights because the plaintiff did not have a hearing on the interpretation of the rule; (4) the court's interpretation of the rule is vague, overbroad, arbitrary, and capricious; and (5) the defendants selectively applied the rule. The plaintiff seeks damages and various forms of injunctive and declaratory relief. The defendants have filed a poorly-drafted motion to dismiss or for summary judgment alleging that they are entitled to Eleventh Amendment, judicial, and qualified immunity, the plaintiff lacks standing, and the Court should exercise its discretion to refuse jurisdiction under the Declaratory Judgment Act. The plaintiff has filed a motion for summary judgment contending that she is entitled to the relief she requests as a matter of law. The Court heard oral argument from the parties on August 11, 2008. The Court now finds that the defendants are not entitled to judicial or sovereign immunity except in their official capacity, the plaintiff has no standing to sue these defendants for her termination from employment as deputy court administrator but has standing to seek redress for her failure to obtain a promotion, the plaintiff has no protectable property interest in a promotion to the position of court administrator, and the plaintiff's First and Fourteenth Amendment rights were not violated by the action of the state supreme court or its justices. Therefore, the defendants' motion to dismiss or for summary judgment will be granted, the plaintiff's motion for summary judgment will be denied, and the case will be dismissed.

I.  Facts and Proceedings

Julie Pucci first became employed by the nineteenth district court in March 1991 as a court typist, and she rose through the ranks to the position of assistant court administrator in 1995.  That position was reclassified to Deputy Court Administrator in 1998.  The Court Administrator was Doyne Jackson.

In 2001, the plaintiff entered into a live-in relationship with William C. Hultgren, one of the court's judges.  In the fall of 2002, Mark W. Somers was elected to replace a retiring judge of the court, and he took office in January 2003.  The bench then consisted of Judges Hultgren, Wygonik, and Somers.  It appears that Judge Somers and Judge Hultgren were antagonistic toward each other over Hultgren's relationship with the plaintiff and the prospect of her advancement to the court administrator position.  The state supreme court selects the chief judge of the local courts, but due to the unrest among the Dearborn court's members, the supreme court appointed Judge Leo K. Foran, a judge of a neighboring district court, to serve as the chief judge of the Dearborn court.  His tenure as chief judge began in March 2005 and concluded in January 2006, when Judge Somers was appointed chief judge.

On March 30, 2005, Judge Foran announced his intention to reorganize the court's administrative structure by moving the plaintiff to court administrator to replace the retiring Doyne Jackson, and not filling the position of deputy court administrator.  Judge Somers, who vigorously opposed the plaintiff's elevation to the court administrator position because of her relationship with Judge Hultgren, embarked upon a campaign to have the plaintiff removed as a court employee.  On April 4, 2005, Somers wrote to regional court administrator Deborah Green asking her to reverse Judge Foran's decision and prevent the plaintiff from becoming the court administrator.  On April

-3-

14, 2005, Somers wrote a letter to state court administrator Carl Gromek, asking him to reverse

Judge Foran's appointment of the plaintiff as court administrator, remove Judge Foran as chief

judge, and expand the terms of Administrative Order 1996-11 (the state court's anti-nepotism rule)

to include "domestic partners" among those disqualified from court employment, which would result

in the plaintiff's termination from her court position.

Apparently, Judge Somers's complaints attracted the supreme court's attention.  Anne

Boomer, administrative counsel to the supreme court, submitted an affidavit outlining the procedures

taken by the court when dealing with such an issue:

> 5. When an issue is brought to the Court's attention, it is considered at its weekly
> administrative conference.  The reports or memoranda are distributed the week prior
> to consideration, and there is often email traffic on specific proposals.  Sometimes,
> the Court asks for more information or background on an issue.
> 6. The Court's action can range from declining to act and closing the file, to
> circulating the proposal to a specific group for comment, or publishing for comment.
> In some cases, the Court adopts an amendment with immediate effect.
> 7. Enforcement of administrative orders is handled by the state court administrator
> and its regional administrators.

Def.s' Mot. to Dismiss, Ex. K, Boomer Aff.  In light of Somers's letter, the supreme court discussed

altering the policy to prohibit the hiring or retention of domestic partners.  Pl.'s Mot. for Summ. J.,

Ex. F, Green Dep. 52.  The policy was not amended because the court "had a hard time defining

domestic partners and, quite frankly, we were afraid of getting into the whole homosexual

relationship realm, and so it was just a door that we thought was way too complicated to open." *Id.*

at 52-53.

At some point, Carl Gromek visited Judge Foran.  According to Foran, Gromek began

"yelling and screaming at the top of his voice" that Foran had "screwed up" by not posting the

position of court administrator publicly before appointing Pucci.  Pl.'s Mot., Ex. B. Foran Dep. 34-

36.  On May 10, 2005, Gromek sent Judge Foran a letter that states:

> I referred this matter to the Court, and the Justices have concluded that Ms. Julie A.
> Pucci's romantic partnership with Judge Hultgren is a violation of the spirit of its
> antinepotism rule.  While the Court is of the view that Ms. Pucci may remain
> employed with the 19th District Court in the capacity that predated her romantic
> relationship with Judge Hultgren, she cannot be advanced or otherwise be
> advantaged after the beginning of her romantic relationship with Judge Hultgren.
> Accordingly, Ms. Pucci will not succeed Doyne E. Jackson as Court Administrator.

Pl.'s Mot. for Summ. J., Ex. G.

In response to Gromek's letter, then-Chief Judge Foran amended his reorganization plan by

appointing court clerk Sharon Langen as court administrator and retaining the plaintiff as the deputy

court administrator.  On July 7, 2005, Regional Court Administrator Deborah Green requested

confirmation that Pucci's appointment as court administrator had been revoked.

A short time later, Judge Somers became chief judge.  On October 10, 2006, Judge Somers

sent out a memo announcing another administrative reorganization.  He proposed to retain one court

administrator and one clerk of the court and eliminate the position of deputy court administrator,

held by the plaintiff.  Sharon Langen was to continue as the court administrator until a new one was

hired, and then she would be reassigned to the clerk of court position.

On October 25, 2006, the plaintiff applied for the position of court administrator.  One day

later, Chief Judge Somers responded via letter:

> As you know, by letter dated May 10, 2005, the State Court Administrator advised
> all concerned parties that the Justices of the Michigan Supreme Court have
> concluded you are not eligible to assume the position of court administrator for the
> 19th District Court by virtue of your romantic domestic partnership with Judge
> Hultgren as the relationship "is a violation of the spirit of its antinepotism rule".  A
> copy of Mr. Gromek's letter is attached.  To my understanding, this conclusion was
> not dependent upon the fact Judge Hultgren was chief judge pro tem at that time.
> Although I was certainly not privy to their discussion, the Justices' decision was

given in response to a written inquiry which stated the issue presented as "Whether the live-in fiancé of a sitting judge can/should be permitted to assume the position of court administrator in the same court in which the judge is sitting?"   The antinepotism rule referenced by Mr. Gromek is Administrative Order 1996-11 which provides in pertinent part that "Relatives of justices, judges or court administrators shall not be employed within the same court or judicial entity."   No distinction is made between "chief" and other justices/judges.

I would again encourage you to apply for the open court administrator position with the 40th District Court and wish you the very best.

Pl.'s Resp., Ex. 3, Somers Dep., Ex.

Judge Somers followed through with his plan and fired the plaintiff from her position as deputy court administrator.  He did not hire her as the court administrator.  Meanwhile, the plaintiff's attorney wrote to the supreme court to inquire about the procedure and rationale it used to make its determination that the plaintiff could not advance within the court unit.  Carl Gromek replied with a letter that states: "In response to your letter of January 11, 2008, there is no formal opinion or order of the Court.  The Justices discussed this matter administratively."  Pl.'s Mot. for Summ. J., Ex. H.  The plaintiff's attorney sent another letter, to which no reply was received.

The plaintiff filed her first lawsuit against the city of Dearborn, the nineteenth district court, and Mark Somers on February 12, 2007.  As part of his defense to the discrimination and retaliation charges, Judge Somers took the position that he eliminated the plaintiff's job as part of a reorganization plan, and he could not hire her for the new job because the supreme court would not let him.  The plaintiff then filed the present action on February 7, 2008 alleging that the supreme court's pronouncement in its May 10, 2005 letter violated her constitutional rights.  The plaintiff's complaint seeks the following remedies:

**Equitable relief:**
A.      A declaration that Defendants [sic] interpretation and application of Administrative Order No. 1996-11 to Plaintiff is unconstitutional;

-6-

B.     A temporary restraining order, a preliminary injunction, after final hearing, a permanent injunction precluding the Michigan Supreme Court, or any of its agencies, from applying Administrator [sic] Order No. 1996-11 to any class of persons other than those specifically defined and identified in Administrator [sic] Order No. 1996-11;

C.     An Order that restores Plaintiff to the position of Court Administrator, a position for which Plaintiff had been designated and selected prior to the unconstitutional conduct of Defendants.

D.     Any other equitable relief to which Plaintiff may be entitled, including the payment of attorney fees, interest and costs.

**Legal Relief:**

A.     Awards Plaintiff all past and future lost wages and economic losses and/or damages incurred and suffered by Plaintiff as a result of Defendants' violation of Plaintiff's constitutional rights.

B.     Awards Plaintiff compensation for her past and future non-economic injuries incurred and suffered by Plaintiff as a result of Defendants' violation of Plaintiff's constitutional rights.

C.     Awards Plaintiff punitive damages as provided in 42 USC § 1983, and other applicable statutes including damages available to her under 42 USC § 1985.

D.     All other relief to which Plaintiff may be entitled, including payment of attorney fees, interest and costs.

Compl. at 12-13. The present motions followed.

## II. Discussion

Although the defendants have styled their motion in the alternative as one to dismiss or for summary judgment, they have attached affidavits to their motion papers addressing the merits of the plaintiff's claim. Since they ask the Court to consider matters outside the pleadings, the motion will be considered under Federal Rule of Civil Procedure 56. *See* Fed. R. Civ. P. 12(d) (stating that "if, on a motion . . . [to dismiss for failure of the pleading to state a claim upon which relief can be granted,] matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment under Rule 56"); *Michigan Paytel Joint Venture v. City of Detroit*, 287 F.3d 527, 533 (6th Cir. 2002) (quoting *Soper v. Hoben*, 195 F.3d 845, 850 (6th

-7-

Cir. 1999)); *Coalition to Defend Affirmative Action v. Regents of University of Mich.*, 539 F. Supp. 2d 924, 944 (E.D. Mich. 2008).

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The fact that the parties have filed cross motions for summary judgment does not automatically justify the conclusion that there are no facts in dispute. *Parks v. LaFace Records*, 329 F.3d 437, 444 (6th Cir. 2003) ("The fact that the parties have filed cross-motions for summary judgment does not mean, of course, that summary judgment for one side or the other is necessarily appropriate."). Instead, the Court must apply the well-recognized standards when deciding such cross motions: when this Court considers cross motions for summary judgment, it "must evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the nonmoving party." *Westfield Ins. Co. v. Tech Dry, Inc.*, 336 F.3d 503, 506 (6th Cir. 2003).

A motion for summary judgment under Fed. R. Civ. P. 56 presumes the absence of a genuine issue of material fact for trial. The Court must view the evidence and draw all reasonable inferences in favor of the non-moving party and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

A.  Standing

The defendants argue that the plaintiff lacks standing to seek an injunction reinstating her to her former position because that relief cannot be given by the supreme court, which is not her immediate employer.  They also argue that the supreme court did not force Judge Somers to fire the plaintiff; these defendants simply prohibited her promotion.  The plaintiff contends, however, that the wrongs she suffered all can be traced to these defendants, since they barred her promotion to the court administrator position, and that led to her eventual termination as deputy court administrator.

It appears, then, that the plaintiff seeks relief from the present defendants for two wrongs: the reversal of her promotion, and the loss of her original job.  Although the court administrator position is filled, the plaintiff asks for injunctive relief that upsets the debarment in the event the position should become vacant in the future and she seeks to reapply.  "'[A] plaintiff must demonstrate standing separately for each form of relief sought.'"  *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (quoting *Friends of Earth, Inc. v. Laidlaw Environmental Services, Inc.*, 528 U.S. 167, 185 (2000)); *see also Johnson v. Turner*, 125 F.3d 324, 338 (6th Cir. 1997).  "To establish Article III standing, a litigant must show (1) an injury in fact; (2) a causal connection between the injury and the conduct complained of; and (3) that the injury will likely be redressed by a favorable decision."  *Barnes v. City of Cincinnati*, 401 F.3d 729, 739 (6th Cir. 2005) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

The injury must be "actual or imminent, not conjectural or hypothetical."  *Lujan*, 504 U.S. at 560 (internal quotations and citations omitted).  "[A] plaintiff is not entitled to injunctive or declaratory relief '[a]bsent a sufficient likelihood that [s]he will again be wronged in a similar way,' *City of Los Angeles v. Lyons*, (1983), unless the plaintiff is subject to "continuing, present adverse

-9-

effects," *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974)." *Schultz v. United States*, 529 F.3d 343, 349 (6th Cir. 2008); *see also Fieger v. Ferry*, 471 F.3d 637, 643 (6th Cir. 2006) ("In the context of a declaratory judgment action, allegations of past injury alone are not sufficient to confer standing. The plaintiff must allege and/or 'demonstrate actual present harm or a significant possibility of future harm.'" (quoting *Peoples Rights Org., Inc. v. City of Columbus*, 152 F.3d 522, 527 (6th Cir. 1998)). For example, the Sixth Circuit has held that a plaintiff who has *repeatedly* attempted to obtain employment with a municipality had standing to challenge certain hiring practices. *Cleveland Branch, N.A.A.C.P. v. City of Parma, OH*, 263 F.3d 513, 528 (6th Cir. 2001).

The injury also must be "fairly traceable" to the defendants' conduct. However, intervening acts of a third-party may break the causal connection between the injury and the allegedly illegal action. *Compare Lambert v. Hartman*, 517 F.3d 433, 437 (6th Cir. 2008) (holding that a plaintiff had standing to challenge a municipal's website that made public her social security number and driver's license number, where the plaintiff's personal information was used by a third-party to steal her identity, notwithstanding the intervening criminal act of the third-party, because the plaintiff has "alleged sufficient facts to show that her injuries were fairly traceable to the publication of her personal information by the Clerk") *with Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 41-42 (1976) ("In other words, the 'case or controversy' limitation of Art. III still requires that a federal court act only to redress injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court."); *Alston v. Advanced Brands and Importing Co.*, 494 F.3d 562, 565 (6th Cir. 2007) (holding that parents lacked standing to sue advertisers of alcohol for the injury to their children from their children illegally purchasing alcohol, noting that "the causal connection between

-10-

the defendants' advertising and the plaintiffs' alleged injuries is broken by the intervening criminal

acts of the third-party sellers and the third-party, underage purchasers"); *American Canoe Ass'n, Inc.*

*v. City of Louisa Water & Sewer Com'n*, 389 F.3d 536, 542 (6th Cir. 2004) ("The causation

requirement of the constitutional standing doctrine exists to eliminate those cases in which a third

party and not a party before the court causes the injury.").

This Court's found in *Pucci v. Nineteenth Dist. Court*, 565 F. Supp. 2d 792 (E.D. Mich.

2008), that it was Judge Somers and not the supreme court that caused the plaintiff's termination.

The facts are undisputed that Judge Somers had the authority under Michigan law to act in matters

of personnel for the local court unit.  The district court is an administrative unit unto itself, and

although it is subject to superintending control by the state supreme court, Mich. Comp. Laws §

600.8101(1), the administrative duties of the court, including the authority to hire and fire court

employees, fall to the chief district court judge.  Mich. Ct. R. 8.110(C)(3) (2008).  Neither the

supreme court nor any of its justices played any role in the plaintiff's termination from her job.  In

fact, the court's letter to Judge Forhan stated that the plaintiff could "remain employed with the 19th

District Court in the capacity that predated her romantic relationship with Judge Hultgren."  Pl.'s

Mot. for Summ. J., Ex. G.  The plaintiff's termination is not "fairly traceable" to the conduct of these

defendants.

The same conclusion must be reached for the plaintiff's claim for prospective injunctive and

declaratory relief.  The plaintiff's relevant injury scenario for standing purposes would be that she

obtains the position of court administrator in the nineteenth district court at some time in the future,

but she is barred from occupying it because the supreme court forbids it.  This injury is not "actual

or imminent"; rather it is "hypothetical."  *See Lujan*, 504 U.S. at 560.  The court administrator

-11-

position is currently filled.  The position would have to open up, and the plaintiff would have to desire to apply for it. Only then will the interpretation of the administrative order be relevant prospectively.  The plaintiff suggests that one of her injuries could be addressed by an order from this Court reinstating her to the position of Court Administrator.  However, the Court is not aware of authority authorizing it to redress discrimination by Judge Somers with an order directed to separate defendants to "reinstate" the plaintiff to a position that she had not held during Somers's entire tenure.  If this Court were to strike down the state court's interpretation of its anti-nepotism rule in full and enjoin the supreme court from applying the rule against the plaintiff, there still would be no redress of the plaintiff's claimed injury because there is no likelihood that the circumstance will recur.  And the Court cannot order the supreme court or the justices to reinstate the plaintiff as a deputy court administrator because those defendants did not fire her in the first place.

On the other hand, in reversing the promotion to the court administrator position, Judges Foran and Somers complied with the supreme court's interpretation of the administrative order. Although the law is clearly established (notwithstanding *Lambert v. Hartman*, 517 F.3d 433, 437 (6th Cir. 2008)) that the intervening act of a third party that causes an injury is not "traceable" to the original conduct, it was the decision of the defendants that led directly to the plaintiff's loss of promotion.  To the extent that the May 10, 2005 directive was a wrongful act, the plaintiff has standing to seek redress for the lost promotion, which the directive plainly caused.

### B.  Eleventh Amendment Immunity

The defendants contend that they are entitled to sovereign immunity under the Eleventh Amendment because they are an arm of the State.  The plaintiff concedes that her damages claim against the supreme court and its justices in their official capacity is barred by the Eleventh

Amendment, but she contends that the individual capacity claims and the claims for prospective injunctive and declaratory relief are not barred.

The Michigan Supreme Court is an arm of the State, and therefore it is entitled to sovereign immunity. *See Dubuc v. Michigan Bd. of Law Examiners*, 342 F.3d 610, 615 (6th Cir. 2003). However, "the State's sovereign immunity does not preclude suits against state officials in their individual capacities for damages under § 1983." *Skinner v. Govorchin*, 463 F.3d 518, 524 (6th Cir. 2006). Moreover, the sovereign immunity bar does not apply when a plaintiff seeks declaratory or injunctive relief against a public official that is "'properly characterized as prospective.'" *Dubuc*, 342 F.3d at 616 (quoting *Verizon Maryland, Inc. v. Public Service Commission of Maryland*, 535 U.S. 635, 645 (2002)); *see also Johnson v. Unknown Dellatifa*, 357 F.3d 539, 545 n. 1 (6th Cir. 2004). That exception to the Eleventh Amendment bar was recognized in *Ex parte Young*, 209 U.S. 123, 155-56 (1908).

"The test for determining whether the *Ex parte Young* exception applies is a 'straightforward' one. The court considers whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective. . . . The focus of the inquiry remains on the allegations only; it does not include an analysis of the merits of the claim." *League of Women Voters of Ohio v. Brunner*, 548 F.3d 463, 474 (6th Cir. 2008) (internal quotes and alterations omitted).

The parties agree that the Michigan Supreme Court and its justices in their official capacity are entitled to sovereign immunity for monetary damages. However, the plaintiff may proceed against the justices in their individual capacities without running afoul of sovereign immunity. The plaintiff's request for an injunction against the individual justices prohibiting an enforcement of an

-13-

unlawful rule or requiring her reinstatement would not be barred by the doctrine of sovereign immunity, but, as noted earlier, the plaintiff has no standing to seek redress for this speculative injury. The defendants' arguments on the loss-of-promotion claim must be rejected, except that the Michigan Supreme Court is entitled to dismissal.

### C.  Judicial Immunity

The defendants argue that the justices are entitled to absolute judicial immunity because the function they performed in disqualifying the plaintiff from advancement within the local court unit was a judicial act. The law does not support that argument, however, since it is apparent that the justices acted in an administrative capacity.

"It is well-established that judges enjoy judicial immunity from suits arising out of the performance of their judicial functions." *Brookings v. Clunk*, 389 F.3d 614, 617 (6th Cir. 2004) (citing *Pierson v. Ray*, 386 U.S. 547, 553-54 (1967) and *Mann v. Conlin*, 22 F.3d 100, 103 (6th Cir. 1994)). Officials entitled to such immunity are immune from suits for money damages, in particular claims brought under section 1983. *Barrett v. Harrington*, 130 F.3d 246, 254 (6th Cir. 1996). However, the burden is on the official to establish immunity. *Id.* at 255.

A judge is not entitled to judicial immunity for performing non-judicial acts or acting completely without jurisdiction. *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991). The Sixth Circuit has explained:

> In *Stump*, the Supreme Court established a two-prong test to determine whether an act is "judicial." [*Stump v. Sparkman*, 435 U.S. 349, 362 (1978)]. First, the court must consider whether the act in question is a function that is "normally performed by a judge." *Id.* This court has previously referred to this inquiry as the functional approach. Under this inquiry, a court is required to examine the nature and function of the act, not the act itself. The Supreme Court reformulated this inquiry in *Mireles* by establishing that, even if a particular act is not a function normally performed by

-14-

a judge, the court must look to the particular act's relation to a general function normally performed by a judge. *Id.* at 13.

Second, in determining whether an act is "judicial," the court must assess whether the parties dealt with the judge in his or her judicial capacity. *Id.* at 12. In examining the functions normally performed by a judge, this court has recognized that "paradigmatic judicial acts," or acts that involve resolving disputes between parties who have invoked the jurisdiction of a court, are the touchstone for application of judicial immunity. *Barrett v. Harrington*, 130 F.3d 246, 255 (6th Cir. 1997) (citing *Antoine* [*v. Byers & Anderson*], 508 U.S. [429,] 435-36 [(1993)]). Conversely, whenever an action taken by a judge is not an adjudication between the parties, it is less likely that it will be deemed judicial. *Cameron v. Seitz*, 38 F.3d 264, 271 (6th Cir. 1994).

*Brookings*, 389 F.3d at 617-18. "Administrative decisions, even though they may be essential to the very functioning of the courts, have not similarly been regarded as judicial acts." *Forrester v. White*, 484 U.S. 219, 228 (1988).

A judge who swore out a criminal complaint against a former litigant for conduct of that litigant in her court was acting in a judicial capacity. *Brookings*, 389 F.3d at 622. And a judge who set dates for hearings for litigants before him acted in a judicial capacity. *Mann v. Conlin*, 22 F.3d 100, 104 (6th Cir. 1994). Yet a judge who chose to discharge a probation officer was not entitled to absolute immunity, even though only judges may undertake such action under state law. *Forrester*, 484 U.S. at 229. A presiding judge who, under Michigan law was authorized to "issue any writs, directives, and mandates that it judges necessary and expedient to effectuate its determinations, and to take any action it deems proper to facilitate the proper administration of justice," Mich. Comp. Laws § 600.219, was found to be acting in an administrative capacity when he prohibited the clerk's office from issuing writs of restitution. *Morrison v. Lipscomb*, 877 F.2d 463, 465-67 (6th Cir. 1989).

-15-

By privately "interpreting" an administrative order dealing with employment issues, the justices were not acting in a judicial capacity. The fact that they reached this decision without the usual incidents of judging – providing opportunity for both sides to be heard, a written decision articulating the reasons, or briefing from opposing parties asking the court to resolve a dispute – makes it "less likely that [their act] will be deemed judicial." *See Brookings*, 389 F.3d at 618. This case most resembles the cases where a judge makes an employment decision, *Forrester*, 484 U.S. at 229, or tries to undertake supervisory control of the lower courts under Mich. Comp. Laws § 600.219, *Morrison*, 877 F.2d at 465-67, where neither legislative or judicial immunity applied. The court itself described the decision as handled "administratively." Pl.'s Mot. for Summ. J., Ex. H. The defendants' informal handling of an employment dispute is an administrative act for which they may not invoke judicial immunity.

### D. Qualified Immunity

The defendants also argue that they are entitled to qualified immunity. "To overcome a qualified-immunity defense in the setting of a constitutional tort, a plaintiff must establish (1) that the defendant violated a 'constitutional right' and (2) that the right 'was clearly established.'" *Leary v. Livingston County*, 528 F.3d 438, 441 (6th Cir. 2008) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Qualified immunity is an affirmative defense that protects officers from liability for civil damages when their conduct does "not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Supreme Court has held that a claim of qualified immunity must be examined in two stages, *see Saucier*, 533 U.S. at 200, although the Sixth Circuit sometimes expands the inquiry into a three-step sequential analysis, stating: "The first inquiry is whether the [p]laintiff has shown a violation of a

-16-

constitutionally protected right; the second inquiry is whether that right was clearly established at the time such that a reasonable official would have understood that his behavior violated that right; and the third inquiry is 'whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established rights.'"  *Tucker v. City of Richmond, Ky.*, 388 F.3d 216, 219 (6th Cir. 2004) (quoting *Higgason v. Stephens*, 288 F.3d 868, 876 (6th Cir. 2002); *see also Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 901 (6th Cir. 2004) (citing *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003)).  That court later explained that although the Supreme Court had continued to use the two-step approach, *see Brosseau v. Haugen*, 543 U.S. 194, 197 (2004) (per curiam), "'the three-step approach may in some cases increase the clarity of the proper analysis.'" *Swiecicki v. Delgado*, 463 F.3d 489, 498 (6th Cir. 2006) (quoting *Estate of Carter v. City of Detroit*, 408 F.3d 305, 311 n. 2 (6th Cir. 2005)).  It appears that when the state actor's conduct is obviously "objectively unreasonable" and violates a constitutional right, the court will "collapse[]" the last two steps.  *Ibid.* (quoting *Caudill v. Hollan*, 431 F.3d 900, 911 n.10 (6th Cir. 2005)).  Where a more exacting analysis of the facts may be necessary, the court tends to employ the third step, since "[i]t is important to emphasize that [the step-two] inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Brosseau*, 543 U.S. at 198 (internal quotes and citation omitted).

The Supreme Court has retreated recently from that protocol, *see Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009) ("On reconsidering the procedure required in *Saucier*, we conclude that, while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory. The judges of the district courts and the courts of appeals should be permitted to exercise their sound

discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."), but the Court finds it useful in cases where, as here, there is a serious question whether the plaintiff's constitutional rights were violated at all. Once the defense is raised, the plaintiff has the burden of demonstrating a violation of a constitutional right and showing that the right was clearly established. *Barrett v. Steubenville City Sch.*, 388 F.3d 967, 970 (6th Cir. 2004).

## 1. Vagueness

The plaintiff first argues that her constitutional rights were violated because the supreme court's anti-nepotism rule and the defendants' interpretation of it are vague. She explains that the rule plus the interpretation failed to give her fair notice of the prohibited conduct. In fact, the plaintiff acknowledges that the rule, contained in an administrative order, "draws an explicit demarcation" of who constitutes a relevant "relative." The plaintiff understood that she did not fall within the definition, but when the supreme court applied the order's "spirit" to her, she lacked the required notice. The plaintiff complains that she was deprived of prior notice that her conduct would come at the expense of career advancement.

The Sixth Circuit has explained:

"[A]n enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972) (holding that Rockford's antinoise ordinance was not unconstitutionally vague). Vague laws are problematic because they (1) "may trap the innocent by not providing fair warning," (2) fail to "provide explicit standards for those who apply them," and (3) threaten "to inhibit the exercise of [First Amendment] freedoms." *Id.* at 108-09 (quotation marks and footnote omitted). A law must therefore "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Id.* at 108.

The Supreme Court has explained that, "[c]ondemned to the use of words, we can never expect mathematical certainty from our language." *Id.* at 110.

-18-

*Deja Vu of Cincinnati, L.L.C. v. Union Tp. Bd. of Trustees*, 411 F.3d 777, 798 (6th Cir. 2005) (en banc). "A more stringent test applies [for vagueness] if the provision interferes with constitutional rights, and a less stringent test applies if the provision concerns civil rather than criminal penalties." *Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 551 (6th Cir. 2007). However, standards governing public employment are not required to set forth standards with the precision required of criminal statutes. *Arnett v. Kennedy*, 416 U.S. 134, 159 (1974) (plurality opinion) (holding that the law allowing the federal government to fire employees for "such cause as will promote the efficiency of the service" survives vagueness and overbreadth challenges); *id.* at 164 (opinion of Powell, J.) (same); *id.* at 177 (opinion of White, J.) (same); *Fowler v. Board of Educ. of Lincoln County, Ky.*, 819 F.2d 657, 665-66 (6th Cir. 1987) (holding that prohibition for "conduct unbecoming a teacher" could not be challenged on vagueness or overbreadth grounds by teacher who was terminated for conduct clearly falling within scope of prohibition); *see also Piscottano v. Murphy*, 511 F.3d 247, 281 (2d Cir. 2007) (holding that "generalized language may appropriately be used to set out standards of conduct for employees").

Another concern underlying the vagueness doctrine is that the statute must provide explicit standards to prevent arbitrary enforcement. *Morrison v. Colley*, 467 F.3d 503, 508 (6th Cir. 2006) ("In addition, the statute 'must provide explicit standards for those who apply them.'" (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972))). However, if discretion is vested in the body promulgating the rules, the concerns of discriminatory enforcement are inapplicable. *Ass'n of Cleveland Fire Fighters*, 502 F.3d at 553.

The fundamental flaw in the plaintiff's vagueness argument is that the administrative order was not used as the basis for the supreme court's action. The order itself plainly states: "Relatives

-19-

of . . . judges or court administrators shall not be employed within the same court."  Pl.'s Mot., Ex.

D (Administrative Order No. 1996-11).  It then defines "relative" specifically as a "spouse, child,

parent, brother, sister, grandparent, grandchild, first cousin, uncle, aunt, niece, nephew, brother-in-

law, sister-in-law, daughter-in-law, son-in-law, mother-in-law, and father-in-law, whether natural,

adopted, step or foster."  *Ibid*.  As the plaintiff points out, her relationship with Judge Hultgren did

not fall within that definition, but she was barred from promotion anyway.  So the plaintiff's claim

is not really that the order was vague, but that the order was clearly defined and its clear meaning

was not followed.  Moreover, Mr. Gromek's letter is not vague.  The application of an order in

violation of its terms may give rise to a challenge on due process grounds (discussed below) or a

challenge that the employment was wrongfully terminated under state law, but does not allow a

vagueness challenge to the enactment itself.  *See Northland Family Planning Clinic, Inc. v. Cox*, 487

F.3d 323, 341 (6th Cir. 2007) (dicta) ("It would in some ways seem that Plaintiffs' argument that

the statutory language is clearly unconstitutional and that the Attorney General's Opinion cannot

be read as a reasonable interpretation cuts against their void for vagueness argument.").

Nor can the plaintiff challenge the "spirit" of the administrative order as being vague.

Although the rationale for the defendants' action made reference to the undefined "spirit" of their

administrative order, the defendants' action plainly was *ad hoc* and not tied to a particular text.

Moreover, this dispute arises in the employment context, where the plaintiff's only loss was a chance

at a particular job.  As noted above, courts have been quite hostile to vagueness challenges in this

context.  The plaintiff's vagueness claim must be rejected, and no constitutional violation can be

premised on that argument.

## 2. Overbreadth

The plaintiff's overbreadth argument suffers from the same defect. Here, she contends that the administrative order is overbroad "as applied to her" because she is not a "relative" under the definition of the rule. Pl.'s Mot. 10. She seems to contend that the manner in which the order was applied is more broad than the language of the text would permit. And, of course, she is right in one respect: her relationship did not fit the definition of "relative" stated in the administrative order.

However, the overbreadth doctrine is a rule that "recognize[s] that 'some broadly written statutes may have such a deterrent effect on free expression that they should be subject to challenge even by a party whose own conduct may be unprotected.'" *Prime Media, Inc. v. City of Brentwood*, 485 F.3d 343, 348 (6th Cir. 2007) (quoting *Members of City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 798 (1984)). "[I]n an appropriate First Amendment overbreadth claim, a plaintiff whose conduct is regulated by a rule of law is permitted to challenge the constitutionality of that particular rule of law regardless of the fact that a more circumscribed version of that rule of law could be applied in a constitutional fashion to prohibit the plaintiff's conduct." *Id.* at 349-50.

The plaintiff's claim here cannot be characterized properly as one for overbreadth for a few reasons. First, she claims the order is overbroad *as applied to her*, where the overbreadth doctrine simply allows individuals whose conduct is admittedly proscribed in a constitutional manner by a law to challenge that law because it may be unconstitutional when *applied to others*. Since the plaintiff is outside the regulated group, not inside, the overbreadth theory does not apply to her. Second, the plaintiff argues not that the law regulates some conduct in a manner that offends the First Amendment, but that it has been applied beyond its terms. That does not constitute an overly broad application of a law within the meaning of the overbreadth doctrine. Finally, the

administrative order in this case was not applied to the plaintiff, who, the defendants concede, does not fall within its scope.  Rather, the defendants made an *ad hoc* decision to disqualify the plaintiff from promotion precisely *because* the administrative order, fairly read, did *not* include her.  There was no danger that the administrative order could be interpreted to reach protected conduct.  It is conceded that the rule did not reach the plaintiff, a circumstance that necessitated the defendants' *sui generis* pronouncement.  The overbreadth doctrine has no application here.

### 3.  Right of Association and Substantive Due Process

The plaintiff also alleges in her complaint that the defendants violated her right of association by prohibiting her promotion based on her relationship with Judge Hultgren.  She finds the source of this right in both the First and Fourteenth Amendments.  By mentioning the concept of substantive due process, the plaintiff also argues that the defendants lacked the authority to do what they did.

"The Constitution protects . . . [the] freedom of intimate association, a privacy interest derived from the Due Process Clause of the Fourteenth Amendment but also related to the First Amendment."  *Anderson v. City of LaVergne*, 371 F.3d 879, 881 (6th Cir. 2004) (citing *Roberts v. United States Jaycees*, 468 U.S. 609, 617-18 (1984)).  "A 'direct and substantial interference' with intimate associations is subject to strict scrutiny, while lesser interferences are subject to rational basis review."  *Ibid.* (quoting *Akers v. McGinnis*, 352 F.3d 1030, 1035 (6th Cir. 2003)).  What qualifies as protected "intimate association" is very broad, and certainly covers the plaintiff's relationships:

> [T]he right to "intimate association" is not limited to familial relationships but includes relationships characterized by "relative smallness, a high degree of selectivity in decisions to begin and maintain the affiliation, and seclusion from others in critical aspects of the relationship." *Roberts v. United States Jaycees*, 468

> U.S. 609, 620 (1984); *see also Anderson v. City of LaVergne*, 371 F.3d 879, 881-82 (6th Cir. 2004) (for summary judgment purposes, a dating relationship between a police officer and an administrative assistant for the police department qualified as an intimate association because the two were monogamous, had lived together, and were romantically and sexually involved); *Akers v. McGinnis*, 352 F.3d 1030, 1039-40 (6th Cir. 2003) (personal friendship is protected as an intimate association).

*Beecham v. Henderson County, Tennessee*, 422 F.3d 372, 375 (6th Cir. 2005).

The right to substantive due process prohibits the government from infringing on "fundamental rights" without sufficient justification. *Rendell-Baker v. Kohn*, 457 U.S. 830, 837-38 (1982). "To state a cognizable substantive due process claim, the plaintiff must allege 'conduct intended to injure in some way unjustifiable by any government interest' and that is 'conscience-shocking' in nature." *Mitchell v. McNeil*, 487 F.3d 374, 377 (6th Cir. 2007) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 848 (1998)). "What seems to be required is an intentional infliction of injury . . . or some other governmental action that is 'arbitrary in the constitutional sense.'" *Stemler v. City of Florence*, 126 F.3d 856, 869 (6th Cir. 1997) (quoting *Lewellen v. Metropolitan Gov't of Nashville & Davidson County*, 34 F.3d 345, 351 (6th Cir. 1994)). However, substantive due process protects only against state action that is not otherwise proscribed by the plain text of other constitutional amendments and for which no adequate mechanism for deprivation can exist. *See Ciminillo v. Streicher*, 434 F.3d 461, 465 (6th Cir. 2006) (reasoning that "[a]lleged conduct that does not implicate a constitutional right protected by another amendment will be analyzed under the substantive due process component of the Fourteenth Amendment"). Where a plaintiff has recourse to an "explicit textual source of constitutional protection," *Graham v. Connor*, 490 U.S. 386, 395 (1989), such as here with her right-to-association claim, a more general claim of substantive due process is not available. *See County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998).

-23-

In this case, the defendants' actions did not directly interfere with the plaintiff's intimate relationship; no one prevented the plaintiff from living with Judge Hultgren. Rather, the action of the defendants only "directly" affected the plaintiff's chance at a promotion. The interference with the plaintiff's association with Judge Hultgren, therefore, is indirect, requiring a rational basis to justify government action.

> Our standards for accepting a justification for the regulatory scheme are far from daunting. A proffered explanation for the [state action] need not be supported by an exquisite evidentiary record; rather we will be satisfied with the government's "rational speculation" linking the regulation to a legitimate purpose, even "unsupported by evidence or empirical data." *FCC v. Beach Communications, Inc.*, 508 U.S. 307, 313 (1993). Under rational basis review, it is "'constitutionally irrelevant [what] reasoning in fact underlay the legislative decision.'" *Railroad Retirement Bd. v. Fritz*, 449 U.S. 166, 179 (1980) (quoting *Flemming v. Nestor*, 363 U.S. 603 (1960)).

*Craigmiles v. Giles*, 312 F.3d 220, 224 (6th Cir. 2002).

In issuing its directive, the state supreme court customized its anti-nepotism stance to fit the plaintiff's circumstance, which admittedly did not fit within its prior rule. That action itself need only have a rational basis to be constitutional. "Virtually every court to have confronted a challenge to an anti-nepotism policy on First Amendment, substantive due process, equal protection, or other grounds has applied rational basis scrutiny." *Montgomery v. Carr*, 101 F.3d 1117, 1126 (6th Cir. 1996). Although the state supreme court did not terminate the plaintiff, even when an employee *is* terminated due to an intimate relationship, the Sixth Circuit applies rational basis review. *Beecham v. Henderson County*, 422 F.3d 372, 374, 378 (6th Cir. 2005).

"The Supreme Court has held that rational-basis review is satisfied 'so long as there is a plausible policy reason' for the decision, *Nordlinger v. Hahn*, 505 U.S. 1, 11 (1992), and it is 'entirely irrelevant for constitutional purposes' whether the plausible reason in fact motivated the

-24-

policymaker, *FCC v. Beach Communications, Inc.*, 508 U.S. 307, 315 (1993)." *Beecham*, 422 F.3d at 378. The Court has little difficulty discerning a plausible reason in this case for the supreme court's determination that allowing the plaintiff to appear to have gained an advantage through her intimate relationship with a judge of the court where she was employed would not advance the court's interest. The state judiciary apparently does not want couples in a committed, romantic relationship to hold leadership positions within the same unit of the court, perhaps to avoid the appearance of impropriety, reduce the potential for compromising administrative and judicial functions, preserve a clear chain of command, or ensure that advancement is based solely on merit. These reasons need not be articulated nor constitute the court's actual reasons for its action. But the fact that such plausible reasons exist provides a rational basis that justifies the state's action in this case. The Court concludes, therefore, that the plaintiff has not demonstrated a violation of her right to freedom of association under the several provisions of the Constitution she cites.

### 4. Equal Protection

Next, the plaintiff argues that she was treated differently from others in familial-type relationships in other courts, and therefore she has been denied the equal protection of the laws. She poses this argument from several different angles. First, she refers to the testimony of regional court administrator Green that the supreme court did not expand the anti-nepotism rule to cover domestic partners such as the plaintiff because of a desire to avoid "getting into the whole homosexual relationship realm." Pl.'s Mot. for Summ. J., Ex. F, Green Dep. 52-53. She then reasons that she has been treated differently than homosexual couples. She does not contend that heterosexual couples comprise a discrete class. Rather, she looks to the cases that provide relief to "a class of one." The plaintiff also offers evidence that two brothers, Jeffrey and Richard Page, were both

employed in the same unit of another district court. Jeffrey was a court officer when Richard was elected judge. Since both of them were allowed to remain in their jobs, the plaintiff reasons that she has been treated differently.

The defendants counter the domestic partner argument with a claim that there is no evidence that the justices actually discussed that feature of a proposed amendment, and there is no evidence that homosexual domestic partners were ever treated more favorably. The defendants explain that the situation with the two brothers was allowed because the administrative rule "grandfathered" relatives working in the same court as of the effective date of the order. The later argument is not supported by the record, since the administrative order became effective in 1996 and Judge Page took office in 2005.

However, the plaintiff's equal protection claim fails for another reason. "The Equal Protection Clause of the Fourteenth Amendment commands that 'no State shall deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne*, 473 U.S. at 439 (citing *Pyler v. Doe*, 457 U.S. 202, 216 (1982)). "The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *Id*. at 440 (citing *Schweiker v. Wilson*, 450 U.S. 221, 230 (1981)). "Isolated instances of state action" should not be treated differently than "broad-ranging state policies." *Beecham v. Henderson County*, 422 F.3d 372, 377 (6th Cir. 2005). So once again, the "classification" that results from the defendants' directive affecting the plaintiff need be supported only by a rational basis.

Although equal protection jurisprudence typically involves a plaintiff's allegations that she has been arbitrarily classified as members of an "identifiable group," in *Village of Willowbrook*, 528 U.S. 562, 564 (2000), the Supreme Court recognized a "class of one" equal protection claim "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  "A 'class of one' plaintiff may demonstrate that a government action lacks a rational basis in one of two ways: either by 'negativ[ing] every conceivable basis which might support' the government action or by demonstrating that the challenged government action was motivated by animus or ill-will." *Warren v. City of Athens*, 411 F.3d 697, 711 (6th Cir. 2005) (citing *Klimik v. Kent County Sheriff's Dept.*, 91 F. App'x. 396, 400 (6th Cir. 2004)).  However, in *Engquist v. Oregon Department of Agriculture*, 128 S. Ct. 2146, 2151 (2008), the Supreme Court, noting the distinction between the government acting as a lawmaker and the government acting "as proprietor, to manage [its] internal operation," held that the "class of one" theory does not apply in the public employment context. The case involved a state employee that was laid off after his employing agency was reorganized.  The Court stated, "we are guided . . . by the 'common-sense realization that government offices could not function if every employment decision became a constitutional matter.'" *Id*. at 2156 (citing *Connick v. Myers*, 461 U.S. 138, 143 (1983)).

The plaintiff's first argument, that the defendants treated her less favorably than homosexual couples and others not identified as "Relatives" under the anti-nepotism order, fails because she cannot identify any homosexuals or others not identified as "Relatives" who were treated any differently under the order than she was.  In fact, Deborah Green testified that the subject of homosexual domestic partners had not been considered, explaining, "[w]e may come to the same

conclusion in a homosexual relationship. We just haven't crossed that bridge yet." Pl.'s Mot. for Summ. J., Ex. F, Green Dep. 125-26. Although the defendants did not amend the order to include domestic homosexual couples, they did not amend it to cover the plaintiff either. The defendants' action toward the plaintiff must be evaluated as a discrete order directed to her alone.

That leaves the "class of one" claim. Equal protection claims can be brought by a "class of one" "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and there was no rational basis for the difference in treatment." *Village of Willowbrook*, 528 U.S. at 564. Despite the questionable application of the theory in the employment context, there is a rational basis for treating the Page brothers differently than the plaintiff and Judge Hultgren. Section 7 of the administrative order provides that "This policy shall not apply to any person who is an employee of the state court system on December 1, 1996, except that from December 1, 1996, forward, no person shall be transferred or promoted or enter into a nepotic relationship in violation of this policy." Because Judge Page was elected into office, he was not transferred or promoted, nor did he "enter into a nepotic relationship" with his brother when he assumed office. Whether this section of the order covers this situation is a matter of interpretation. Moreover, one of the Page brothers – employed as a court officer – was protected by a union, and the other was elected into office, which suggests that the defendants did have a rational basis to allow them to continue to work together. Also, neither of the Page brothers were advanced or promoted since their working relationship began. Similarly, the plaintiff was not fired, but was denied a promotion. Because the Sixth Circuit has recognized anti-nepotic policies as serving a legitimate government interest, and the plaintiff cannot negate every conceivable basis which might support the disparity in treatment, she cannot prove lack of a rational basis for the defendants'

action.  Additionally, unlike her case against Judge Somers, the plaintiff has not alleged or offered any evidence that actions of the defendants in this case were motivated by animus or ill will.

The Court concludes, therefore, that the plaintiff cannot establish a violation of her constitutional rights based on the Equal Protection Clause.

### 5.  Procedural Due Process

Finally, the plaintiff contends that she was deprived of a property interest without the procedural protections required by the Due Process Clause.  She reasons that she had a property interest in the court administrator position because Judge Foran had put his intention to promote her in a memo.  The defendants then caused her to lose her promotion without a hearing because she violated the "ephemeral, subjective and non-descript 'spirit' of the anti-nepotism rule."  Pl.'s Mot. at 18.  She contends that the defendants failed to provide her even the most minimal of procedural protections.

Because the Fourteenth Amendment prevents the States from "depriv[ing] any person of . . . property, without due process of law," the plaintiff must prove that she has a property interest on her way to establishing a constitutional violation.  Such "property interests are not created by the Constitution[;] 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law. . . .'"  *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1986) (quoting *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)).  Federal courts have recognized that state civil servants may have a property interest in continued employment under certain circumstances and must be afforded due process before being discharged. *See, e.g., ibid.*; *Relford v. Lexington-Fayette Urban County Government*, 390 F.3d 452, 460 (6th Cir. 2004) (stating that "[u]nder state law, government and civil service employees may have a property

-29-

right in their continued employment").  The Sixth Circuit has also suggested that a promotion that was contractually-entitled under the state's civil service system may be a property interest for procedural due process purposes.  *Charles v. Baesler*, 910 F.2d 1349, 1352 (6th Cir. 1990).

There was no contract or other entitlement ensuring the plaintiff a promotion in this case. There is proof that Judge Foran had a clear intention to promote the plaintiff, but there is no binding agreement, rule, regulation, or contract that conferred a *right* to the promotion upon the plaintiff. Nor can the plaintiff point to any conduct, custom or practice that implied a contractual or regulatory right to a promotion.  *See Paskvan v. City of Cleveland Civil Service Comm'n*, 946 F.2d 1233, 1235-36 (6th Cir. 1991).  The plaintiff therefore has failed to show that she had a protected property interest in her promotion to court administrator.  At most, she has shown that it was intended that she take the position.  This is insufficient to establish a property interest protected by the Constitution.  The plaintiff, therefore, has not shown that the defendants' action caused a deprivation of her right to procedural due process.

* * * * * * *

Viewing the evidence in the light most favorable to the plaintiff, the Court finds that the plaintiff has not established a violation of her constitutional rights at the hands of these defendants. Because the plaintiff's rights were not violated by these defendants, "there is no necessity for further inquiries concerning qualified immunity."  *Causey v. City of Bay City*, 442 F.3d 524, 531 (6th Cir. 2006) (quoting *Saucier*, 533 U.S. at 201).

III.

The Court concludes that the plaintiff has standing to advance her claim that her constitutional rights were violated by the reversal of her promotion, the institutional defendant and

-30-

the justices in their official capacities are immune from the damage claim under the Eleventh

Amendment, the justices are not entitled to judicial immunity, and because the plaintiff has not

established a violation of her constitutional rights, the individual defendants are entitled to qualified

immunity.  Because of the failure to establish a constitutional violation, the plaintiff is not entitled

to summary judgment in her favor, and the complaint must be dismissed.

Accordingly, it is **ORDERED** that the plaintiff's motion for summary judgment [dkt. #16]

is **DENIED**.

It is further **ORDERED** that the defendants' motion for summary judgment [dkt #17] is

**GRANTED**.

It is further **ORDERED** that the complaint is **DISMISSED WITH PREJUDICE**.


s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:  March 3, 2009

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served
upon each attorney or party of record herein by electronic means or first
class U.S. mail on March 3, 2009.

s/Felicia M. Moses
FELICIA M. MOSES